# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| GEVORG GRIGOR MATEVOSYAN,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, DESERT VIEW ANNEX DETENTION FACILITY,[1]<br><br>Respondent. | No. ED CV 24-01570-PA (DFM)<br><br>Report and Recommendation of United States Magistrate Judge |

This Report and Recommendation is submitted to the Honorable Percy Anderson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

---

[1] As noted by Respondents, the warden of the detention facility where Petitioner is being held is the proper Respondent in a habeas petition filed by an immigration detainee under 28 U.S.C. § 2241. See Doe v. Garland, 109 F.4th 1188, 1195-97 (9th Cir. 2024). Accordingly, the Clerk of Court is directed to substitute Warden, Desert View Annex Detention Facility as the Respondent in this matter.

## I. INTRODUCTION

On July 24, 2024, Petitioner Gevorg Grigor Matevosyan, an immigration detainee proceeding pro se, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. See Dkt. 1 ("Petition"). Petitioner is currently detained at Desert View Annex Detention Facility ("Desert View") in Adelanto, California. See id. at 4.[2] Petitioner requests the Court "release [him] so he can self-deport or, in the alternative, grant [his] request to seek bond with the Immigration Court." Id. at 9.

On November 13, 2024, this Court issued an Order Requiring Response to Petition, see Dkt. 7, and on December 12, 2024, Respondents Field Office Director of Los Angeles, United States Immigration and Customs Enforcement ("ICE"), Director of United States Department of Homeland Security ("DHS"), and United States Attorney General filed a motion to dismiss the case, see Dkt. 10 ("Motion"). Petitioner did not file an Opposition.[3]

For the reasons discussed below, the Court recommends that Respondents' Motion be GRANTED and that this case be dismissed without prejudice.

## II. RELEVANT BACKGROUND

The Court takes judicial notice under Rule 201 of the Federal Rules of Evidence of the following background facts gleaned from records on file with the Ninth Circuit Court of Appeals. See Harris v. Cty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (court may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts).

---

[2] All citations are to the CM/ECF pagination.

[3] Petitioner's failure to file an opposition may be deemed consent to the granting of Respondents' Motion. See L.R. 7-12.

Petitioner is a native of Armenia who was admitted to the United States as a lawful permanent resident in 1990. See Matevosyan v. Garland, No. 19-71079 (9th Cir.), Certified Administrative Record by Executive Office of Immigration Review, Dkt. 3 at 282 (filed May 22, 2019). In October 2003, following a conviction of an aggravated felony that involved fraud or deceit in which the loss to the victims exceeded $10,000, DHS commenced removal proceedings against Petitioner under 8 U.S.C. § 1227(a)(2)(A)(iii). See id. at 280-82. An immigration judge ("IJ") sustained the ground for removal, and Petitioner sought relief through an application for asylum, withholding of removal, and protection from removal under the Convention Against Torture ("CAT"). See id. at 116, 140-41. On June 14, 2004, the IJ denied Petitioner's claims and ordered him removed to Armenia. See id. at 140-41.

In 2008, Petitioner departed the United States on his own accord and entered Mexico. See id. at 116. Petitioner then re-applied for admission to the United States, using a United States passport that did not belong to him. See Matevosyan v. Garland, No. 18-72710 (9th Cir.), Certified Record of Department of Homeland Security Proceedings, Dkt. 9 at 13 (filed Nov. 2, 2018). On June 9, 2008, Petitioner was convicted of making a false claim to United States citizenship in violation of 18 U.S.C. § 911, and he was sentenced to seven months in prison. See id. at 49-54. On October 16, 2008, DHS issued an expedited order of removal against Petitioner, and on January 16, 2008, DHS removed Petitioner from the United States to Armenia. See id. at 4, 28.

On June 20, 2018, Petitioner again illegally reentered the United States near the San Ysidro, California port of entry. See id. at 25-27. United States Border Patrol agents apprehended Petitioner shortly after his arrival, and DHS

reinstated Petitioner's prior order of removal. See id. at 1, 25-27.[4] DHS referred Petitioner to an asylum officer for an interview to determine whether he had a reasonable fear of persecution or torture in Armenia such that he should be permitted to file an application for withholding of removal or CAT protection. See id. at 26. During his reasonable fear interview, Petitioner claimed that he feared being harmed in Armenia by associates of Armenian General Manvel Grigoryan. See No. 18-72710 (9th Cir.), Certified Administrative Record by Executive Office of Immigration Review, Dkt. 8 at 221-32 (filed Nov. 1, 2018). Specifically, Petitioner alleged he was targeted and shot at for reporting that Grigoryan was stealing weapons and food that belonged to the Armenian army. See id. at 228. He stated he was shot at in front of his house for making these reports. See id. Following the interview, the asylum officer determined that Petitioner did not establish a reasonable fear of persecution or torture, and upon Petitioner's request, the asylum officer's determination was referred to an IJ for review. See id. at 218-20, 223. After a hearing, the IJ concurred with the asylum officer's negative reasonable fear determination and returned the case to DHS for Petitioner's removal. See id. at 1-2.

In May 2019, Petitioner appealed the IJ's negative reasonable fear determination and reinstated order of removal. See Matevosyan v. Garland, No. 19-71079, 2022 WL 17175056 (9th Cir. Nov. 23, 2022). The Ninth Circuit held that because Petitioner did not show that he suffered a gross miscarriage of justice in his 2004 removal proceeding, it lacked jurisdiction to review his 2004 order of removal that formed the basis for the reinstatement of removal. See id. at *1. The court further concluded that substantial evidence supported

---

[4] On May 2, 2019, Petitioner pleaded guilty to one count of attempted illegal reentry into the United States under 8 U.S.C. § 1326(a) & (b) in the United States District Court for the Southern District of California. See United States v. Matevosyan, No. 18-3252 (S.D. Cal.), Dkt. 39 (filed May 6, 2019).

the IJ's negative reasonable fear determination. See id. at *2. In reaching this conclusion, the court agreed with the IJ's findings that Petitioner reported the corrupt acts of a single individual rather than a "scheme of corruption entrenched in the ruling party" and that any threats to Petitioner's life "were not motivated by any perceived anticorruption political beliefs but rather by a personal vendetta (i.e., as revenge for reporting Grigoryan)." Id. Finally, the court upheld the IJ's denial of Petitioner's CAT claim, noting that "the regime change in Armenia and Grigoryan's prompt arrest provide substantial evidence to support the IJ's determination that the Armenian government would not engage in, consent to, or acquiesce in [Petitioner's] torture." Id.

On November 9, 2023, Petitioner "willfully and voluntarily turned himself in" to ICE. Petition at 4. On May 14, 2024, an IJ held a custody redetermination hearing. See id. After consideration of the evidence presented, the IJ determined he lacked jurisdiction over Petitioner's request for a change in custody status and denied Petitioner's request for bond. See id. at 4, 16. Petitioner filed an appeal of the IJ's custody determination to the BIA on July 17, 2024. See id. at 18-20.

### III. LEGAL STANDARD

Respondents move to dismiss the Petition pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, without which a federal district court cannot adjudicate the case before it. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). A party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Thus, a jurisdictional challenge can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the moving party asserts that the allegations contained in the

complaint are insufficient on their face to invoke federal jurisdiction. See <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004).

When evaluating a facial attack, the court must accept the factual allegations in the plaintiff's complaint as true. See <u>Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma</u>, 644 F. Supp. 2d 1177, 1189 (N.D. Cal. 2009). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." <u>Safe Air</u>, 373 F.3d at 1039. In resolving a factual challenge, the court "need not presume the truthfulness of the plaintiff's allegations" and "may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." <u>White</u>, 227 F.3d at 1242.

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1104 (9th Cir. 2008). Factual allegations must be enough to "raise a right to relief above a speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion to dismiss, a court accepts the plaintiff's factual allegations in the complaint and construes the pleadings in the light most favorable to the non-moving party. See <u>Shwarz v. United States</u>, 234 F.3d 428, 435 (9th Cir. 2000). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).

# IV. DISCUSSION

## A. Exhaustion of Administrative Remedies

As an initial matter, Respondents argue that Petitioner's claims should be dismissed for failure to exhaust administrative bond procedures with the BIA. See Motion at 13-14.

The Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." Castro-Cortez v. I.N.S., 239 F.3d 1037, 1047 (9th Cir. 2001), abrogated on other grounds by Fernandez-Vargas v. Gonzales, 548 U.S. 30 (2006). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (citation and internal quotation marks omitted). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011). However, exhaustion may be excused where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." S.E.C. v. G.C. George Sec., Inc., 637 F.2d 685, 688 n.4 (9th Cir. 1981).

Respondents argue that Petitioner "does not allege that he has appealed" the IJ's denial of bond to the BIA. Motion at 13. However, while Petitioner does not specifically state that he appealed the IJ's denial of bond to the BIA, he attached to the Petition a document titled "Notice of Appeal from a

Decision of an Immigration Judge." See Petition at 18-20. In this notice, Petitioner checked a box indicating he was "filing an appeal from the Immigration Judge's decision in bond proceedings." Id. at 20. Petitioner dated his appeal to the BIA as July 17, 2024, the same day he dated his Petition, and while he speculates that the BIA "will affirm denial for lack of jurisdiction," he has yet to inform the Court of any determination in his appeal. Id. at 3, 18.

      Here, allowing Petitioner to short cut the administrative process by reviewing his claims before the BIA adjudicates his appeal would "disrupt the agency's autonomy and result in unnecessary judicial review of unexhausted claims." Resendiz v. Holder, No. 12-4850, 2012 WL 5451162, at *5 (N.D. Cal. Nov. 7, 2012); see also Leonardo, 646 F.3d at 1161 ("[The petitioner] should have exhausted administrative remedies by appealing to the BIA before asking the federal district court to review the IJ's decision . . . Once the BIA rendered its decision, [the petitioner] could have properly pursued habeas relief in the district court[.]"). Contrary to Petitioner's argument, it does not appear to the Court that waiting for a decision from the BIA would be "futile" where the relevant provisions provide the BIA jurisdiction over appeals of IJ bond rulings and custody determinations. See 8 C.F.R. §§ 1003.1(b)(7) (appeals may be filed with BIA related to determinations relating to bond, parole, or detention), 1003.1(b)(14) (appeals may be filed with BIA related to decisions of immigration judges regarding custody of noncitizens subject to a final order of removal).[5] But even if the Court were to excuse Petitioner's failure to exhaust

---

[5] The BIA also has "jurisdiction to rule on whether an IJ has jurisdiction to make a bond determination." See Executive Office of Immigration Review, BIA Practice Manual, Chapter 7 – Bond, Section 7.2(b)(3), https://www.justice.gov/eoir/reference-materials/bia/chapter-7/2 (last accessed Feb. 6, 2025).

his administrative remedies, his claims must still be dismissed for lack of jurisdiction and failure to state a cognizable claim, as described below.

**B.    Request for Release to Self-Deport**

Respondents argue for dismissal on the basis that 8 U.S.C. § 1252(b)(9) strips this Court of jurisdiction to review Petitioner's challenge to the merits of his removal order and denial of his application for asylum, withholding of removal, and relief under CAT. See Motion at 11-12. In particular, Respondents contend that the Court lacks jurisdiction to consider Petitioner's claim that "he should not be removed to Armenia because of his speculative concern over persecution he faces there." Id. at 12.

The Real ID Act of 2005 mandates that judicial review of all administratively final orders of removal take place exclusively in the courts of appeals: "[A] petition for review . . . shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). "[J]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order . . . No court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact." 8 U.S.C. § 1252(b)(9). Taken together, § 1252(a)(5) and § 1252(b)(9) "mean that any issue—whether legal or factual—arising from any removal-related activity can be reviewed only through the [petition for review] process." J.E.F.M. v. Lynch, 837 F.3d 1026, 1031 (9th Cir. 2016). However, "claims that are independent or collateral to the removal process do not fall within the scope of § 1252(b)(9)." Id. at 1032 (citations omitted). Thus, the Ninth Circuit has distinguished between claims that "arise from" removal

9

proceedings under § 1252(b)(9), which must be channeled through the petition for review process, and claims that are collateral to, or independent of the removal process. Id.

In Singh v. Gonzales, the Ninth Circuit recognized that the district court had jurisdiction over the petitioner's ineffective assistance of counsel claim that arose after his attorney failed to timely file a petition for review. See 499 F.3d 969, 980 (9th Cir. 2007). The court concluded that the petitioner's claim did not challenge a final order of removal under § 1252(b)(9) because his claim, which arose after a final order of removal was entered, could not have been raised before the agency and the petitioner would otherwise have no legal avenue to obtain judicial review. See id. at 979. In contrast, in Martinez v. Napolitano, the Ninth Circuit held, in the context of a district court challenge to the BIA's decision to deny an application for asylum, withholding of removal, and relief under CAT, that "[w]hen a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)." 704 F.3d 620, 623 (9th Cir. 2012) (citation omitted).

Here, the Court agrees with Respondents that it lacks jurisdiction to order Petitioner's release "even if under conditions of self-deportation, so that he can choose another country which is safe for his departure." Petition at 4. Sections 1252(a)(5) and 1252(b)(9) deprive this Court of jurisdiction over this request for relief, which threatens the execution of Petitioner's removal order. See Bumu v. Barr, No. 20-06742, 2020 WL 6465433, at *3 (W.D.N.Y. Nov. 3, 2020) (finding district court lacked jurisdiction over petition where it sought to "threaten the execution of the removal order" by challenging ICE's discretionary decision to remove petitioner to Mali). Petitioner argues that he should be released so he can self-deport to Brazil because he will face persecution if he is deported to Armenia. See Petition at 5-6. However, the

issue of Petitioner's country of removal is encompassed in the removal order—which was reinstated by DHS in June 2018—where the IJ ordered Petitioner "removed from the United States to Armenia." Matevosyan, No. 18-72710 (9th Cir.), Certified Record of Department of Homeland Security Proceedings, Dkt. 9 at 1-2; see also Tonfack v. Attorney General U.S., 580 Fed. Appx. 79, 81 (3rd Cir. 2014) (noting "the IJ [is] obligated to designate a country of removal as part of the removal proceedings" and finding petitioner's argument that "Cameroon is not a proper country of removal" was encompassed in removal order).

    The Court's conclusion that Petitioner's request for release for self-deportation is effectively a challenge to his removal order is reinforced by the fact that his argument that he would face persecution in Armenia was already considered by the Ninth Circuit. See Matevosyan, 2022 WL 17175056 at *2. The Ninth Circuit concluded that substantial evidence supported the IJ's negative reasonable fear determination, noting that "the regime change in Armenia and Grigoryan's prompt arrest provide substantial evidence to support the IJ's determination that the Armenian government would not engage in, consent to, or acquiesce in [Petitioner's] torture." Id. Thus, to permit Petitioner to challenge this issue through a request for release in favor of self-deportation would be contrary to the Immigration and Naturalization Act's ("INA") intent "to limit all aliens to one bite of the apple with regard to challenging an order of removal." Martinez, 704 F.3d at 622 (citing Bonhometre v. Gonzales, 414 F.3d 442, 446 (3d Cir. 2005)).

    In short, to the extent Petitioner seeks release so he can circumvent the order of removal requiring his deportation to Armenia, the Court lacks jurisdiction over this request.

## C.     Request for Release Under *Zadvydas*

Respondents further contend that any claim by Petitioner challenging the duration of his detention at Desert View fails because he has not cooperated with officials to effectuate his removal to Armenia. See Motion at 18-19.

Section 241(a)(1)(A) of the INA provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." This 90-day period constitutes the "removal period" during which time the Attorney General "shall detain the alien." 8 U.S.C. § 1231(a)(2)(A). Relevant here, the "removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." Id. § 1231(a)(1)(C). Additionally, certain inadmissible criminal noncitizens, including one whom the Attorney General has determined will be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the 90-day removal period. See id. § 1231(a)(6).[6]

---

[6] The Supreme Court has held that § 1231(a)(6) contains no requirement that bond hearings be held after six months of detention in which the government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community. See Johnson v. Arteaga-Martinez, 596 U.S. 573, 581 (2022). There, however, Court did not reach the issue of whether prolonged detention of a noncitizen without a bond hearing violates due process, leaving that issue "for the lower courts to consider in the first instance." Id. at 583. While the Court notes that some courts in this district, after considering a procedural due process argument under Matthews v. Eldridge, 424 U.S. 319 (1976) in favor of bond, have granted habeas relief and ordered the government to arrange for a bond hearing before an IJ, Petitioner raises no such procedural due process argument here. See, e.g., Jensen v. Garland, No. 21-01195, 2023 WL 3246522, at *5-8 (C.D. Cal. May 3, 2023) (finding the failure to hold a bond hearing

In <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), the United States Supreme Court addressed the issue of the government's authority under 8 U.S.C. § 1231(a)(6) to detain inadmissible and criminal aliens beyond the standard removal period of 90-days following the issuance of a final order of removal. The Court construed 8 U.S.C. § 1231(a)(6) to limit an alien's post-removal detention to "a period reasonably necessary to bring about the alien's removal." <u>Id.</u> at 689. The Court thus placed the burden on the alien to show, after a presumptively reasonable of six-month period of detention, that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." <u>Id.</u> at 701.

In <u>Pelich v. I.N.S.</u>, 329 F.3d 1057 (9th Cir. 2003), the Ninth Circuit addressed <u>Zadvydas</u> in the context of an alien who intentionally frustrated the removal process. In <u>Pelich</u>, the petitioner was an alien who had been ordered removed to Germany or Poland. <u>See id.</u> at 1058. Germany denied entry to the petitioner, and the petitioner refused to cooperate with efforts to obtain Polish travel documents. <u>See id.</u> at 1058. The Ninth Circuit found that the petitioner "himself is responsible for his plight" because he refused to fill out a Polish passport application, thereby impeding Poland's ability to determine whether it should issue travel documents. <u>Id.</u> at 1059. Thus, the Ninth Circuit held that "<u>Zadvydas</u> does not save an alien who refuses to provide requested documentation to effectuate his removal" because a detainee "cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." <u>Pelich</u>, 329 F.3d at 1060. The Ninth Circuit subsequently applied <u>Pelich</u> to reach a similar holding in <u>Lema v. I.N.S.</u>, 341 F.3d 853 (9th Cir. 2003). There, the Ninth

---

deprived petitioner of procedural due process and ordering petitioner's release from custody unless, within 28-days of entry of judgment, petitioner was granted custody hearing before IJ).

Circuit upheld the district court's denial of the petitioner's habeas petition where the petitioner, an Ethiopian national, claimed to be Eritrean and had neither reapplied to Ethiopia for travel documents nor furnished evidence corroborative of his Ethiopian nationality to Ethiopia despite a request by the INS that he do so. See id. at 856.

Here, it is undisputed that ICE has detained Petitioner beyond both the 90-day removal period and the six-month term that is presumptively reasonable under Zadvydas. However, as in Pelich and Lema, Petitioner refuses to cooperate with officials to secure travel documents from Armenia. Indeed, Petitioner admits "he has refused to comply with departure to Armenia." Petition at 6. This admission is consistent with documents attached to the Petition, including a "Warning for Failure to Depart" and an "Instruction Sheet to Detainee Regarding Requirement to Assist in Removal," both of which Petitioner "refused to sign." Id. at 10-11. The Petition also details Petitioner's ongoing attempts to renounce his Armenian citizenship to avoid deportation there. For example, Petitioner states he "has written a letter to the Office of Chief Counsel in Los Angeles's Field Office and Washington ICE Headquarters renouncing his Armenian citizenship." Id. at 5. A copy of this letter is attached to the Petition. See id. at 12-13. Also attached is a copy of a letter to the Consulate General of Armenia, in which Petitioner "formally request[s] the urgent withdrawal of [his] Armenian citizenship." Id. at 24-25. Thus, through his own admission and efforts to renounce his Armenian citizenship, Petitioner has demonstrated his unwillingness to cooperate in efforts to effectuate his removal to Armenia.

While Petitioner claims he is "complying with immigration by choosing a second country for deportation," and that he "handed over a Brazilian CPF Card which is issued for living in Brazil," id. at 4, his attempts to secure travel documents to other countries are irrelevant to the issue at hand, see Marks v.

Clark, No. 07-1897, 2008 WL 4298793, at *4 (W.D. Wash. Sept. 18, 2008) (finding the petitioner's assertion that his numerous requests for travel documents from other countries indicated his cooperation was irrelevant where he refused to procure travel documents from Trinidad, which was the country to which he was ordered removed). Petitioner admits that ICE informed him that Brazil "does not recognize his status." Petition at 4. Thus, if Petitioner is in fact entitled to removal to Brazil, he has failed to provide sufficient information and documentation to permit officials in Brazil to confirm his status.

Given Petitioner's lack of cooperation, he cannot satisfy his burden under Zadvydas to show that there is no significant likelihood of removal in the reasonably foreseeable future. See Pelich, 359 F.3d at 1057. Indeed, "[w]e cannot know whether an alien's removal is a 'remote possibility,' until the alien makes a full and honest effort to secure travel documents. A particular alien may have a very good chance of being removed, but if that alien is refusing to cooperate fully with officials to secure travel documents, neither the INS nor a court can sensibly ascertain the alien's chance of removal." Lema, 341 F.3d at 856 (citing Zadvydas, 533 U.S. at 690). As the Ninth Circuit found in Pelich, Petitioner "has the keys [to his freedom] in his pocket" and could likely effectuate his removal by cooperating with the government. 329 F.3d at 1060. Thus, the Court should deny habeas relief on this claim.[7]

---

[7] Petitioner may file another habeas petition if, after he cooperates fully and honestly with ICE to effect his removal and a reasonable time period then elapses without result, his removal is not significantly likely in the reasonably foreseeable future. If Petitioner files another habeas petition under 28 U.S.C. § 2241, that petition would not be subject to the "second or successive" prohibitions set forth in 28 U.S.C. § 2244 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. See Barapind v. Reno, 225 F.3d 1100,

D. **Request for Release Due to Conditions of Confinement**

Respondents argue that the Court lacks jurisdiction over Petitioner's challenge to "substandard conditions" at Desert View. See Motion at 15-16. Specifically, Respondents contend the Court lacks jurisdiction over Petitioner's complaints that he has had "less access" to the law library, yard, family visits, phone calls, legal material, rehabilitation programs, food sales, job offers, television, personal clothes and shoes, storage space, music, mail services, and medical care. See id. at 15 (citing Petition at 7). Petitioner argues the Court should require the IJ to conduct a bond hearing or mandate his immediate release, so he can be subject to "conditions that do not amount to punishment and are less harsh." Petition at 8.

A claim falls within the "core of habeas corpus" when a petitioner challenges the "fact or duration of his confinement" and "seeks either immediate release from that confinement or the shortening of its duration." Preiser v. Rodriguez, 411 U.S. 475, 489 (1973). By contrast, a civil rights action is the "proper remedy" for a claimant asserting "a constitutional challenge to the conditions of his prison life, but not the fact or length of his custody." Id. at 475, 490. The key inquiry is whether success on the petitioner's claim would "necessarily lead to immediate or speedier release." Nettles v. Grounds, 830 F.3d 922, 934 (9th Cir. 2016). If success would not necessarily lead to expedited release, the claim falls outside the core of habeas corpus. See id. at 935.

Recently, in Pinson v. Carvajal, 69 F.4th 1059 (9th Cir. 2023), the Ninth Circuit addressed the question of whether federal prisoners can use a habeas petition to obtain review of their conditions of confinement where the only

---

1111 (9th Cir. 2000) (holding that the ADEPA's gatekeeping provisions in § 2244 do not apply to "a § 2241 petition filed by an INS detainee").

16

remedy requested is release because no set of conditions could render imprisonment constitutional. Id. at 1062, 1065-66. There, the court found "the relevant question is whether, based on the allegations in the petition, release is legally required irrespective of the relief requested." Id. at 1072-73 (emphasis in original). The court affirmed dismissal for lack of jurisdiction of a habeas petition concerning a prisoner's failure to implement policies in response to COVID-19, finding the petition failed to allege facts to support the contention that no set of conditions would cure the alleged constitutional violations. See id. at 1073-75. Thus, the court concluded that the alleged constitutional violations were properly remedied in a civil rights action rather than a habeas petition. See id. at 1075.

Similar to Pinson, the Court lacks jurisdiction to consider Petitioner's claims related to the conditions of his confinement. Petitioner does not allege facts to show that his release is legally required or that no set of conditions could cure the alleged constitutional violations. Accordingly, Petitioner's conditions of confinement claim should be dismissed for lack of jurisdiction.[8]

---

[8] Although courts have limited discretion to recharacterize a habeas petition as a civil rights complaint, the Court declines to do so here. See Pinson, 69 F.4th at 1076 ("We therefore conclude the district court was not required to convert [the petitioner's] habeas petitions into civil rights actions[.]"). If converted into a civil rights complaint, the petition would be subject to the procedural and substantive requirements of the Prison Litigation Reform Act, which were not addressed by Petitioner, and would be subject to a higher filing fee. See 28 U.S.C. §§ 1915, 1915A; 42 U.S.C. § 1997e.

## V. RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and accepting this Report and Recommendation; (2) granting Respondents' motion to dismiss; and (3) dismissing this action without prejudice.

Date: February 24, 2025

DOUGLAS F. MCCORMICK
United States Magistrate Judge